**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|   |   |
|---|---|
| In re: <br><br> EDWARD KOOYOMJIAN, SR., <br>       Debtor <br><br> STEVEN WEISS, TRUSTEE, <br>       Plaintiff <br> v. <br><br> MARY KOOYOMJIAN, <br> a/k/a MARI KOOYOMJIAN, <br>       Defendant | Chapter 7 <br> Case No. 11-43408-CJP <br><br><br><br> Adv. Pro. No. 16-04048-CJP |

## MEMORANDUM OF DECISION REGARDING SANCTIONS

After consideration of the *Verified Complaint for Contempt of Court and for Injunctive Relief* (Doc. No. 1) (the "Complaint"), the *Motion for Order Declaring Defendant in Contempt of Court and for Further Relief* (Doc. No. 31) (the "First Contempt Motion"), and the *Motion for Findings of Additional Contempt and for Imposition of Sanctions* (Doc. No. 79) (the "Second Contempt Motion") filed by Steven Weiss (the "Trustee"), the Chapter 7 trustee appointed in the converted case of the debtor, Edward Kooyomjian, Sr. (the "Debtor"), the answer to the Complaint (Doc. No. 30) and responses to the First and Second Contempt Motions (Doc. Nos. 34 and 80, respectively) filed by Mary Kooyomjian a/k/a Mari Kooyomjian (the "Defendant"), the non-debtor spouse of the Debtor, evidence and argument presented at numerous hearings and status conferences, and in documents filed with the Court, the Court having found that the Defendant acted in contempt of this Court's order dated July 28, 2016, among other orders, and

1

the parties having consented to determination of these matters without further evidence being presented, with good and sufficient cause appearing, the Court finds and orders as follows:

I. Jurisdiction

The matters set forth herein constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (N), and the Court has jurisdiction over this matter pursuant to 28 U.S.C. § l334(a). The Court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

II. Background

On October 16, 2012, the Trustee commenced Adversary Proceeding No. 12-04106, in which he sought authority to sell the Defendant's interest in property located at 26B Boulevard de Montreal, Nice, France, registered in section NM 204 of the applicable land register as parcels 67 and 87 (the "Property") pursuant to 11 U.S.C. § 363(h).[1] The Court (Hoffman, J.) granted a default judgment in favor of the Trustee on January 17, 2013 (the "Judgment"), authorizing the Trustee to pursue the sale of the Defendant's interest. The Defendant took no action to set aside the Judgment.

On April 24, 2013, the Trustee filed a motion (Bankr. Doc. No.[2] 163) (the "Sale Motion"), seeking authority pursuant to § 363(b) and (f) to sell the interests of the Debtor and the Defendant in the Property. On May 24, 2013, the Defendant, through counsel, filed an *Objection to Private Sale of Real Estate as Propose[d] and Counteroffer of Mari Kooyomjian* (Bankr. Doc.

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

[2] "Doc. No." references filings in this adversary proceeding, while "Bankr. Doc. No." references filings in the main bankruptcy case.

2

No. 175) (the "Objection"), offering $30,000 to purchase the Debtor's interest, assuming a purchase price for the Property of $60,000.[3] Four days later, the Defendant filed a *Withdrawal of Objection to Private Sale of Real Estate as Proposed and the Counteroffer of Mari Kooyomjian* (Bankr. Doc. No. 176) (the "Notice of Withdrawal"), by which she withdrew her Objection.[4]

On June 4, 2013, the Court (Hoffman, J.) entered an order (Bankr. Doc. No. 178) (the "Sale Order"), granting the Sale Motion and authorizing the sale of the Property to Joan King or her nominee (the "Purchaser") for $86,000 (the "Purchase Price"). The Sale Order incorporated an agreement between the Trustee and Catherine Shemeligian, as guardian for Geraldine Shemeligian (the "Creditor"), a creditor possessing a lien on the Debtor's interest in the Property, resolving the Trustee's objection to the Creditor's proof of claim, by which the estate was to receive a "carve-out" of sale proceeds in the amount of $12,500. The Sale Order provided in relevant part as follows:

> [T]he Trustee is authorized to make the following distributions from the proceeds of the sale allocable to the Debtor's interest in the Property [to wit, $43,000]: ordinary closing costs, e.g., recording fees, a "break up" fee to David Hattery in the amount of $580, and payment to the estate in the amount of $12,500. The remaining proceeds attributable to the Debtor's interest in the Property will be remitted to Catherine Shemeligian, as Guardian of Geraldine Shemeligian, to be applied to her secured claim . . . . [T]he proceeds attributable to [the Defendant's] interest in the Property will be held subject to further order of this Court, pending instructions from the Debtor and [the Defendant] as to the party to whom the proceeds should be remitted.

---

[3] The initial purchase price set forth in the Sale Motion was $58,000 and higher offers were solicited pursuant to the notice of sale in an amount no less than $60,000.

[4] In the *Motion to Withdraw as Counsel* (Bankr. Doc. No. 191) (the "Withdrawal Motion"), filed by Mary Kooyomjian's counsel in the Debtor's bankruptcy case on March 10, 2016 and allowed after a hearing on April 28, 2016, counsel stated that "[a]fter further reviewing Mrs. Kooyomjian's finances, my client elected to withdraw the Objection and Counter Offer, which I did on May 28, 2013 (docket entry #176)." Withdrawal Mot. ¶ 5. The Defendant did not object to the Withdrawal Motion, but has subsequently stated in the context of this adversary proceeding that she did not intend to withdraw her offer or objection, suggesting that she did not authorize the filing of the Notice of Withdrawal.

3

Sale Ord. 2–3.[5]

The Defendant was aware of the entry of the Sale Order as a copy of the order was served on her directly. *See* BNC Notice, Bankr. Doc. No. 179. The Defendant did not file an appeal or otherwise seek relief from the Sale Order.

Some two and half years after entry of the Sale Order, the Trustee filed a motion (Bankr. Doc. No. 188) (the "2004 Motion") to examine the Defendant pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Rules"), which the Court granted without opposition on February 2, 2016. In the 2004 Motion, the Trustee acknowledged that he faced several procedural hurdles in his attempts to complete the sale of the Property "with the assistance of counsel in Nice hired by the Purchaser[,]" including needing to obtain certified translations of sale-related pleadings and judicial approval of the sale in France pursuant to a proceeding commenced by the Purchaser (the "French Proceeding"). 2004 Mot. ¶ 10 n.1. In addition, the Trustee noted that the Defendant frustrated his ongoing efforts to sell the Property because she hired counsel in France ("French Counsel"), who had opposed the relief sought in the French Proceeding on behalf of the Defendant. The Trustee stated in the 2004 Motion that "it is imperative at this juncture to examine [the Defendant] under oath, to confirm that she consents to the completion of the sale or, in the alternative, the basis for opposing the Trustee's efforts to

---

[5] In the Sale Motion, the Trustee stated "[o]n information and belief, since the [stipulation resolving the Trustee's objection to the Creditor's Claim] was approved, Ms. Kooyomjian agreed that any proceeds attributable to her interest in the Nice Property would be applied to restitution claims in criminal proceedings brought against the Debtor." Sale Mot. ¶ 10. In her Objection, which was withdrawn, the Defendant stated that she "has not agreed, at any point, to have her interest in the Property applied to the Debtor's criminal restitution[, which she argued was] solely attributable to the Debtor," attaching a copy of the Superior Court's Order of Probation Conditions for the Debtor ("Probation Conditions Order"). Obj. ¶ 10, Ex. A. The Sale Order provided that "the proceeds attributable to [the Defendant's] interest in the Property will be held subject to further order of this Court, pending instructions from the Debtor and [the Defendant] as to the party to whom the proceeds should be remitted." Sale Ord. 3.

4

sell the Property despite the orders of this Court." 2004 Mot. ¶ 13.  The Trustee conducted the 2004 examination of the Defendant on May 25, 2016.

On June 8, 2016, the Trustee filed this adversary proceeding, requesting that the Defendant be found in contempt of "prior orders of the Court" and in willful violation of the automatic stay under § 362, seeking injunctive relief and sanctions, including payment of damages and attorneys' fees incurred in connection with the Defendant's contempt.  While the Sale Order does not expressly require the Defendant to do or refrain from doing anything to effectuate the sale, the Trustee asserts that the Defendant took actions to frustrate the order's effect and violated the automatic stay by delaying consummation of a sale of the Property by both opposing efforts to complete the sale of the Property by filing papers in the French Proceeding necessary for the Trustee to convey the Property and conditioning her cooperation on payment of the equivalent of her share of the proceeds.

On July 1, 2016, this Court entered a preliminary injunction (Doc. No. 21) (the "Preliminary Injunction") enjoining the Defendant "from directly or indirectly assigning, alienating, selling, liquidating, transferring, hypothecating, pledging, or encumbering" the Property after a hearing at which the Defendant appeared *pro se* and reported that she had retained counsel who would be appearing in the adversary proceeding on her behalf. Prelim. Inj. 2. On July 20, 2016, the Court held a further hearing and the Defendant consented on the record, through her counsel, to entry of permanent injunctive relief (Doc. No. 26) (the "July 20 Injunction"). *See* Proceeding Mem., Doc. No. 26.  On July 28, 2016, the Court entered a further injunction (Doc. No. 28) (the "July 28 Injunction"). Pursuant to the July 28 Injunction, the Court ordered the Defendant to withdraw her opposition to the sale in the French Proceeding and "to take such other steps as are reasonably required by the Trustee to effectuate the sale of the

5

Property." July 28 Inj. 2. On September 8, 2016, this Court conducted a hearing on the Trustee's First Contempt Motion. The Defendant did not appear, but was represented by counsel. Following the hearing, on September 12, 2016, this Court entered an order (Doc. No. 38) (the "Contempt Order"). As set forth in more detail in the Contempt Order, the Court found that the Defendant was in contempt of the Sale Order and the July 20 and July 28 Injunctions "by her actions in communicating that the withdrawal of her opposition to the Trustee's sale of the Property was or could be conditioned on the receipt of funds by Ms. Kooyomjian or any other event. As the Sale Order makes clear, the proceeds attributable to Ms. Kooyom[]jian's interest in the Property will be held subject to further order of this Court." Contempt Ord. 1. The Court further found that "[w]hile she executed a form of withdrawal and delivered it to her attorney, her opposition to the sale has not formally been withdrawn in France, and Ms. Kooyomjian has acted to delay and condition the withdrawal [of her opposition to the sale] in contempt of the Orders." *Id*. In addition, the Court scheduled an evidentiary hearing to determine appropriate sanctions for the Defendant's actions, and stated: "the Court may also consider any continuing or additional contempt at that time." *Id*.

     The Defendant, who represented that she was "told" she had to retain counsel with respect to the French Proceeding, eventually instructed her counsel to withdraw her opposition in that proceeding. However, despite her instructions, the Defendant asserted that her French Counsel continued to object to the legitimacy of this Court's orders and continued to press an objection. The Defendant stated that French Counsel insisted that, under applicable law, the proposed transfer of the Property could not be approved by a French court. The Defendant also represented that her goal was, and continued to be, to "purchase" her husband's share of the Property from the estate.

6

The Court continued the hearing on sanctions and further contempt multiple times to allow for consideration of the results of the French Proceeding, which the parties reported was progressing. On June 22, 2017, the court in the French Proceeding (the "French Court") issued its ruling regarding the Property transfer denying the Purchaser's request. Based on a translated copy of the French Court's judgment submitted by the Trustee in connection with a status report filed in the adversary proceeding (Doc. No. 71, Ex. A), the court considered the original opposition to the sale filed by the Defendant and found that she had not been properly served with notice of the pleadings in the Debtor's bankruptcy case in this Court. It further found that, even if she had been served, "our jurisdiction is not in a position to confirm this finding." Additionally, the French Court ordered the intended Purchaser of the Property pursuant to the Sale Order to pay the Defendant's costs in defending her interests in the French Proceeding (the "Cost Award").

Although the Defendant, in the context of the contempt proceedings, has consistently blamed her former counsel in the Debtor's case for withdrawing her Objection to the sale of the Property and her counteroffer, the Defendant's allegations in the French Proceeding that she was not properly served with or provided notice of the Trustee's requests before this Court seeking authority to sell the Property were false. The Defendant also blamed her French Counsel for purportedly continuing to take actions in contravention to her instructions in the French Proceeding. As a result of the French Court's ruling, the Trustee has not been able to complete the sale of the Property through the judicial process in France.

In order that the Trustee might still be able to complete the sale, the Trustee requested through the Defendant's counsel that she agree to voluntarily sign a deed and other documents to enable the Trustee to consummate the sale and asked that the Defendant specifically acknowledge

that she was properly served with the pleadings in this Court relevant to the Trustee's efforts to effectuate the sale of the Property.

The Court held a status conference regarding the First Contempt Motion in this adversary proceeding on August 16, 2017, and scheduled an evidentiary hearing for November 8, 2017. The Defendant stated that she would refuse to sign a deed and give up her perceived rights under French law at the August 16 hearing.

The Trustee filed his Second Contempt Motion on August 24, 2017, outlining further contempt on the part of the Defendant in refusing to execute documents to assist the Trustee in finalizing the sale and requesting the issuance of punitive sanctions for the Defendant's active circumvention of the Court's orders in order to coerce her compliance. The Defendant filed an opposition to the Second Contempt Motion (Doc. No. 80) (the "Second Contempt Motion Objection"). In her opposition, the Defendant asserted "that there may be some French law, regulation, practice, custom or procedure that prevents the sale of the Property notwithstanding the asserted withdrawal of her opposition to the sale or any pending legal proceeding in France, notwithstanding her vacating the Property, notwithstanding her payment of any upkeep costs and expenses associated with the Property, notwithstanding her being awarded her costs incurred/from the pending legal proceeding in France, and notwithstanding her present agreement to sign any deed/instrument effectuating the transfer/sale of the Property." Second Contempt Mot. Obj. ¶ 14. The Defendant, however, agreed "to sign any deed/instrument effectuating the transfer/sale of the Property, but reserve[d] her right to account for any payments of the Property's costs and expenses in any final/future accounting by this Honorable Court corresponding to this adversary proceeding or the underlying bankruptcy petition." *Id*. at ¶ 27.

8

The hearings on sanctions and further contempt were again continued for status conferences a number of times, given the Defendant's agreement to cooperate in signing documentation to effectuate the sale of the Property. However, after a further status conference held on May 31, 2018, the Trustee raised another impediment to closing, noting that to transfer the Property a surveyor and pest inspector were required to visit the Property under French law and the Defendant was directed to coordinate access for such inspections. While access was provided, the Defendant then took the position at a continued hearing on June 21, 2018, that she would refuse to sign a deed and give up her perceived rights under French law, indicating that she would rather go to jail for contempt.[6]

In order to establish a clear record regarding the specific documentation the Trustee required from the Defendant to effectuate the transfer of the Property, the Court entered a further order at the conclusion of the June 21, 2018 hearing, providing, among other things, that "on or before July 13, 2018 at 4:30 p.m., the chapter 7 trustee, Steven Weiss, shall file and serve the following: (1) a statement listing all documents required to be signed by Ms. Kooyomjian to transfer the property and (2) a proposed form of order setting forth a timetable for the transfer, attaching forms of the documents required to be executed, and the proposed consequences should Ms. Kooyomjian fail to comply." Ord., Doc. No. 98. The Trustee sought an extension of the deadline to comply with the order after the Purchaser's new French counsel had informed him that she believed the Property could be transferred by documents executed solely by the Trustee, subject to an independent counsel in the United States providing a legal opinion that the Sale Order would permit a similar transfer under Federal and Massachusetts law.

---

[6] On June 21, 2018, the Defendant's counsel sought to withdraw as her counsel after the hearing, stating that the Defendant took a position at the hearing against the advice of counsel. Mot., Doc. No. 95, ¶ 1.

9

In connection with the Trustee's efforts to obtain a legal opinion that would permit a transfer of the Property without the Defendant's cooperation, on August 16, 2018, the Trustee filed a motion (Doc. No. 107) (the "363(i) Motion") seeking entry of an order, pursuant to §§ 105(a) and 363(i), establishing a bar date for the Defendant to exercise her rights under § 363(i), which provides that a co-owner may purchase property from the estate that has been the subject of a sale order under § 363(h) "at the price at which such sale is to be consummated." 11 U.S.C § 363(i). Through the 363(i) Motion, the Trustee also requests an order providing that the Defendant's § 363(i) rights are deemed waived if she does not timely exercise them.

At a hearing on the 363(i) Motion, the Trustee stated that, despite his substantial experience, he had not previously considered the Defendant's rights under § 363(i). The Trustee asserted that, pursuant to § 363(j), the Defendant must pay the Purchase Price in full and that the Trustee would distribute to the estate and the Defendant "the proceeds of such sale, less the costs and expenses . . . of such sale" according to the respective interests in the Property, which the Sale Order determined to be fifty percent each. The Trustee contended that costs of sale would include the estate's costs in pursuing enforcement of the Sale Order and contempt and that the portion of the proceeds allocable to the Defendant should be available to pay those costs.

In order to determine the costs and expenses of the sale for purposes of the 363(i) Motion and appropriate sanctions for the Defendant's contempt, at the Court's direction, the Trustee filed an affidavit (Doc. No. 124) ("Trustee Affidavit"), in which he stated that he has incurred (i) legal fees in the amount of $16,454.50 in connection with the process of obtaining authority to sell the Property pursuant to § 363(h) and his efforts to consummate the sale in France unrelated to the adversary proceeding, and (ii) legal fees in the amount of $35,051 for "time spent from the time that [the Trustee] learned that the Defendant was taking actions to thwart the sale in France,

10

including the filing of and pursuit of this adversary proceeding." Trustee Aff. ¶ 3. The Trustee Affidavit also provided that the Purchaser of the Property pursuant to the Sale Order incurred $15,586.98 in legal fees in connection with the French Proceeding to effectuate the transfer of Property.

The Defendant asserts that she has consistently indicated her desire to purchase her "husband's share" of the Property. She disputes that the Trustee's efforts and related costs are reasonable and asserts that she has not acted in contempt of this Court's orders by "protecting" her rights. The Defendant filed an unsigned affidavit (Doc. No. 120), which she supplemented at Doc. No. 126 (collectively, the "Defendant Affidavit"), in support of her position that she had made the Trustee aware of her desire to purchase her husband's interest from the estate long before the Trustee incurred fees and expenses seeking to enforce the Sale Order. Attached to the Defendant Affidavit are (i) a letter to the Trustee from Attorney James Ehrhard dated December 11, 2012, offering that the Defendant "is willing to pay the estate directly at a small premium," presumably for her husband's interest at a valuation based on the original purchase price, and (ii) a portion of a transcript from the Defendant's deposition conducted by the Trustee on May 25, 2016, in which the Defendant states that she would only consent to a sale of the property, despite the Sale Order, if the Property was sold to her for a payment for her "husband's share, $43,000," which amount is half of the Purchase Price for both the Debtor's share and her share pursuant to the Sale Order. In her affidavit, the Defendant also states that, since entry of the Sale Order, she has incurred and paid continuing costs for property taxes and condominium fees in the amount of 12,948.99 EUR and legal fees for French counsel (7,480 EUR) and U.S. counsel

($9,806.09), all of which she asserts should be considered with respect to any sanction award and any division of proceeds.[7]

III. Discussion

The Court has "considerable discretion" when confronting violations of its own orders and "'it may choose from a broad universe of possible sanctions.'" *Charbono v. Sumski (In re Charbono)*, 790 F.3d 80, 89 (1st Cir. 2015) (quoting *Velázquez Linares v. United States*, 546 F.3d 710, 711 (1st Cir. 2008)). "In exercising this considerable discretion, however, the court must give individualized consideration to the particular circumstances, and balance a myriad of factors." *Id*. (internal quotations and citations omitted).

Pursuant to § 105(a), bankruptcy courts are vested with the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code and may, upon their own motion, take "any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a); *see also Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43–44 (1st Cir. 2008) (determining that "[b]ecause § 105(a) gives courts this power to ensure compliance with its own orders, we have referred to it as conferring 'statutory contempt powers'

---

[7] Robert Shemeligian, an interested party in the Debtor's case, filed a *Motion to Compel* (Bankr. Doc. No. 201), which the Court construed as a response to both the 363(i) Motion and the Defendant Affidavit, and which filing was also added to the adversary proceeding docket (Doc. No. 130) (the "Shemeligian Response"). He argues that the actions of the Defendant have harmed the creditors of the Debtor's estate and objects to the Defendant receiving any amounts on account of her interest in the Property, including reimbursement for expenses she has incurred with respect to the Property as reflected in the Affidavit. Shemeligian asserts that the promised sale of the Property has been used by both the Debtor and Defendant as a "carrot" in the Debtor's criminal proceeding in the Superior Court to obtain more favorable sentencing and probation terms. The Defendant has argued that restitution is only attributable to the Debtor, providing a copy of the Probation Conditions Order applicable to the Debtor. The Sale Order did not directly address the restitution issue as it relates to the Defendant's share of proceeds, leaving it an open issue that was ultimately in control of the Debtor and Defendant as they were to inform the Court "as to the party to whom the proceeds should be remitted." Sale Ord. 3.

which 'inherently include the ability to sanction a party.'"); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000), *cert. denied*, 532 U.S. 1048 (2001) (holding that 11 U.S.C. § 105 "provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have").

With such vested authority, the Court may issue civil contempt sanctions to "protect[ ] the due and orderly administration of justice and . . . maintain [ ] the authority and dignity of the court." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 78 (1st Cir. 2002). The contempt remedy for violations of court orders may be used "to coerce the defendant into compliance with the court's order, or, where appropriate, to compensate the harmed party for losses sustained." *Eck v. Dodge Chem. Co. (In re Power Recovery Sys., Inc.)*, 950 F.2d 798, 802 (1st Cir. 1991); *see also Bessette*, 230 F.3d at 445 (recognizing that bankruptcy courts have appropriately used their contempt power to award actual damages and attorneys' fees).

A party alleging civil contempt must establish by clear and convincing evidence that a contemnor violated a court order. *See AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001) (citation omitted); *Ellis v. Dunn (In re Dunn)*, 324 B.R. 175, 179 (D. Mass. 2005) (clear and convincing standard for contempt applies in bankruptcy discharge context); *In re Sayeh*, 445 B.R. 19, 28 (Bankr. D. Mass. 2011) (clear and convincing standard for contempt applied where trustee sought to enforce automatic stay). In order to determine whether a party has contemptuously failed to comply with a court's order:

> [t]he underlying order must be clear and unambiguous in its terms. The test is whether the contemnor is able to ascertain from the four corners of the order precisely what acts are forbidden. The "clear and unambiguous" standard is limited to an examination of the language of the order and does not include an inquiry into the legal efficacy of the order itself.

13

*Fatsis v. Braunstein (In re Fatsis)*, 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009) (internal citations omitted). Further, "while good-faith efforts alone do not insulate a defendant in a contempt action . . . our precedent permits a finding of contempt to be averted where diligent efforts result in substantial compliance with the underlying order." *AccuSoft*, 237 F.3d at 47.

This Court found the Defendant in contempt of various Court orders as set forth in its Order dated September 12, 2016 (the "Contempt Order") (Doc. No. 38), based on the Debtor's actions in conditioning the withdrawal of her opposition filed in the French Proceeding on certain payments and her failure to promptly effectuate the filing of the withdrawal of her opposition with the French Court.[8] The Trustee seeks further findings of contempt and violation of the automatic stay in addition to the imposition of sanctions.

Based on the record in this case, the Trustee has not met his burden of demonstrating that the Defendant willfully violated the automatic stay imposed by § 362(a) by "acting to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).[9] While the Defendant actively took steps to frustrate the sale of Property pursuant to the Sale Order by initially opposing the sale of the Property in France and conditioning her cooperation on payment with respect to her share that was premature under the terms of the Sale Order, the Trustee did not meet his burden of demonstrating that the Defendant willfully took steps to control property of the estate in violation

---

[8] Even if contempt had not been previously determined, the Court would have inherent authority to impose sanctions for failure to comply with the Court's orders. *See, e.g., In re Charbono*, 790 F.3d 80, 87 (1st Cir. 2015) (holding "without serious question, that bankruptcy courts possess the inherent power to impose punitive non-contempt sanctions for failures to comply with their orders.").

[9] No other provision of § 362(a) appears to be applicable.

of the stay versus what amounted to a misguided attempt to assert the Defendant's rights to her interest in the Property by offering to pay the Debtor's share.[10]

The Court does find, however, that sanctions are warranted in connection with the Contempt Order and, therefore, must determine an appropriate sanction in relation to the findings in the Contempt Order. The Court is mindful that sanctions for contempt under its inherent powers or pursuant to 11 U.S.C. § 105 should be narrowly tailored to ensure or coerce compliance with its orders. *See, e.g., In re Power Recovery Sys.*, 950 F.2d at 802. Nonetheless, the Court has broad discretion in determining an appropriate sanction. For civil contempt "'make-whole relief' is a commonplace sanction...[the amount of which] must be established by competent evidence, and must bear a reasonable relationship to the actual losses sustained by the injured party." *Fatsis*, 405 B.R. at 10. "Compensation for losses is not the only factor to be considered [and] setting the amount of an effective sanction may include punitive concerns as well as considerations of deterrence." *Id.* at 10–11.

Determination of appropriate sanctions in this case requires the Court to consider the totality of the circumstances in which the contempt occurred, including (i) the fact that the Defendant (1) took a multitude of contrary positions throughout the course of this adversary proceeding, several of which she voluntarily agreed to and then abandoned, causing an inordinate amount of delay and waste of judicial resources, (2) ultimately instructed her counsel to withdraw the opposition filed in the French Proceeding commenced by the Purchaser, and (3) argued that her French Counsel was taking positions contrary to her instructions at some point after she

---

[10] In any event, the Trustee is not an "individual" entitled to seek damages for stay relief within the meaning of § 362(k) and his remedy for violation of the automatic stay would be the "contempt process issued pursuant to the Court's authority under 11 U.S.C. § 105(a) . . . . [T]hough the stay is a statutory injunction, it is deemed to be an order of the court and enforceable as such by contempt." *In re Sayeh*, 445 B.R. at 27 (citations omitted).

15

requested in writing that her opposition be withdrawn, and (ii) the reasonableness of the legal fees expended by the estate pursuing the sale and related contempt proceedings. The Court recognizes the Trustee's significant efforts to preserve the integrity of this Court's orders and the sale process contemplated by the Bankruptcy Code, which must be balanced with the shifting legal hurdles faced by the Trustee in finalizing the sale of property in a foreign jurisdiction and the prospect that the Defendant may exercise her § 363(i) rights, which could have been considered at an earlier date.[11]

The record in this case supports two conflicting, but not irreconcilable, views of what brought the parties to this juncture. The Trustee's view is straightforward—that the Defendant intentionally undermined the sale contemplated by the Sale Order to gain leverage and attempted to block the sale of the Property at every opportunity.

The Defendant's view of this case is more complicated. The Debtor's interest in the Property was an asset of the estate that apparently had no equity because of an attachment or judgment lien obtained by a creditor. The Trustee appears to have negotiated a carve-out in the amount of $12,500 for the estate if the Trustee could effectuate a sale of the Property through the bankruptcy process. Perhaps without fully appreciating the difficulties that might be associated with compelling a sale in a foreign jurisdiction, the Trustee ultimately incurred legal fees of $16,454.50 in connection with the process of obtaining authority to sell the Property pursuant to § 363(h) and his efforts to consummate the sale in France. The cost of those efforts alone absorbed much of the value of the carve-out, even assuming that the Defendant would be charged

---

[11] The Court also considered the issues raised by the Shemeligian Response regarding promises of restitution that are denied by the Defendant. To the extent Robert Shemeligian has standing to object in the context of this contempt proceeding, given the lack of explicit direction in the Sale Order or any state court order, the Court finds that the issue of the Defendant's obligation to contribute to restitution to the Debtor's victims is a question that is more appropriately addressed by the Superior Court.

16

with half of that expense.[12] Additionally, the Trustee admits that he had not considered that the Defendant had the right under § 363(i) to purchase the Property at the Purchase Price "before consummation of" the sale of the Property to the intended Purchaser.  Whether or not the Purchaser was aware of the Defendant's § 363(i) rights is not established in the record, but the Purchaser is charged with that knowledge.  It is also not apparent that the Defendant was specifically aware of her § 363(i) rights, although the record reflects that the Defendant sought to purchase her husband's interest from the estate at various times. Whether the Defendant perceived such offers as reaching a similar result under § 363(i), despite not strictly complying with the requirements under that provision, or whether the Defendant was strategically waiting to formally exercise her rights is unclear.  While procedurally deficient, these offers would likely have compelled the Trustee to consider alternative options more closely had he been aware of the Defendant's § 363(i) rights at that time, before many of the legal fees had been incurred by the estate in connection with the contemplated sale of the Property and enforcement of the Sale Order.

      Weighing the totality of the circumstances, the Defendant did act in contempt of this Court's orders without legitimate excuse on a number of occasions and caused great delay regarding the sale of the Property and such conduct must be sanctioned.  The amount of such sanctions, however, is mitigated by the Court's conclusion that the legal fees incurred by the

---

[12] Section 363(j) provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

11 U.S.C. § 363(j).

estate with respect to the Trustee's efforts to consummate the sale, where the estate would only realize $12,500, and to enforce this Court's orders greatly exceeded the amount necessary to address the Defendant's contempt, particularly when the Trustee had not considered the Defendant's § 363(i) rights in evaluating his approach to the sale of the Property. Even if it were not considering the Trustee's fees as damages in connection with the sanctions request, the Court is required to assess the reasonableness of the amount of the fees incurred by the Trustee in the context of the Debtor's case and would likely find that the fees incurred were disproportionate based on the circumstances of the case. *See* 11 U.S.C. § 330.

## IV. Conclusion

For all of the foregoing reasons, after careful consideration of the record, including that sanctions would be appropriate to address the contempt found by the Court given the difficulties faced by the Trustee in administering this case because of the Defendant's actions, the Court shall exercise its inherent authority and jurisdiction to enforce its own orders and will enter judgment in favor or the Trustee for the Defendant's civil contempt in violating the Contempt Order and award sanctions and other relief based on the totality of the circumstances as follows:

i) If the Property is sold as contemplated by the Sale Order, the Defendant shall pay $20,000 to the estate, which is comprised of $10,000 attributable to attorneys' fees for counsel to the Trustee in connection with "costs and expenses" of the sale and $10,000 to compensate the estate for attorneys' fees incurred as a result of the Defendant's contempt, which $20,000 amount shall constitute the full amount of the Defendant's allocated "costs and expenses" under § 363(j) to be deducted from the proceeds attributable to her interest from the sale of the Property; provided,

|   |   |
|---|---|
|  | however, that the Trustee may seek allowance of additional "costs and expenses" incurred after the date of this decision on account of closing costs, if any. |
| ii) | If the Defendant exercises her rights under § 363(i) pursuant to the separate order to be entered with respect to the 363(i) Motion, the amount to be tendered by the Defendant shall include $20,000, which is comprised of $10,000 attributable to attorneys' fees for counsel to the Trustee in connection with "costs and expenses" of the sale and $10,000 to compensate the estate for attorneys' fees incurred as a result of the Defendant's contempt, which $20,000 amount shall constitute the full amount of the Defendant's allocated "costs and expenses" under § 363(j) to be deducted from the proceeds attributable to her interest from the sale of the Property. |
| iii) | If the Property is not sold, the Defendant shall pay $10,000 to the estate as sanctions for her civil contempt. |
| iv) | The Defendant shall receive no additional credit and have no claim against the estate for amounts she expended during the pendency of the Debtor's bankruptcy case on account of the Property (which she asserts amounts to approximately 13,000 EUR excluding her counsel fees). |
| v) | The Defendant shall repay to the Purchaser an amount equal to any amount collected from the Purchaser on account of the Cost Award in the French Proceeding, or the Defendant shall execute and deliver to the Purchaser a written waiver of the Cost Award as may be enforceable under applicable French law. |
| vi) | All injunctions entered in this adversary proceeding will be dissolved, except that the portion of the Preliminary Injunction that states "Ms. Kooyomjian, any person |

19

acting in concert with or for the benefit of Ms. Kooyomjian, and all persons who receive actual notice of this Court's Order by personal service or otherwise, are hereby immediately enjoined from directly or indirectly assigning, alienating, selling, liquidating, transferring, hypothecating, pledging, or encumbering, the [Property], until further Order of the Court" shall remain in effect as a permanent injunction.

vii) The judgment shall be without prejudice to the Trustee seeking further orders of the Court in support of the Sale Order as may be appropriate if the Defendant does not exercise her § 363(i) rights.

viii) Subsections (iv) through (vii) above are not contingent on any particular disposition of the Property.

A separate judgment shall enter consistent with this decision.

Entered this 31st day of December, 2018.

By the Court,

*[signature]*

Christopher J. Panos
United States Bankruptcy Judge